UNITED STATES *v.* MEADOWS, WYE & Co. (No. 3873)[1]

[1] T. D. 48143.

United States Court of Customs and Patent Appeals, January 27, 1936

*Joseph R. Jackson*, Assistant Attorney General (*Charles D. Lawrence*, Special Assistant to the Attorney General, and *Marcus Higginbotham, Jr.*, special attorney, of counsel), for the United States.

*Brown & Carter* (*Allan R. Brown* and *Fred J. Carter* of counsel) for appellee.

[Oral argument December 2, 1935, by Mr. Lawrence and Mr. Carter]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:

The merchandise involved in this appeal is described in the entry as "four cases of glass canes," and was classified for duty by the collector at the port of New York as glass rods or canes under paragraph 218 (b) of the Tariff Act of 1930. The importer protested, claiming the goods to be dutiable under one of the following paragraphs of the said act, alternatively: 231, at 30 or 40 per centum, 230 (d), 218 (f), or 218 (b). On the trial, the sole reliance was upon the claim under said paragraph 231, counsel stating the claim of the importer thus:

We claim that it is dutiable at 40 percent under paragraph 231, under the provision for glass enameled, or in any other form, 40 percent, the provision reading, "* * * glass colors, fluxes, glazes, and enamels, all the foregoing ground or pulverized, 30 per centum ad valorem; in any other form, 40 per centum ad valorem." We tried a case on this same kind of material sometime ago. In that case your honor, Judge Sullivan, overruled the protest on the ground that the words in paragraph 218, "for whatever purpose used," which covered these rods, even though they were not used as rods. Judge Brown, I believe, wrote a dissenting opinion, and his opinion was that "for whatever purpose used" means for whatever purpose used as rods. The Court of Customs and Patent Appeals agreed with Judge Brown in the case of *Meadows, Wye & Co.* vs. *United States*, T. D. 46775, that that provision means for whatever purpose used as rods; but the court said that inasmuch as we had not established that these rods are not used as rods, we had not proved our case. So today we are going to attempt to prove that they are not used as rods.

The trial court held that the protest should be sustained, and entered judgment accordingly. In the decision of the court, the following findings of fact are made:

First. The uncontradicted testimony as to the *imported merchandise*, represented by exhibit 1, establishes the following facts:

(1) It is glass rods or canes.

(2) It is glass or fusible enamel.

(3) It is used as material for the manufacture of various articles, the rods being melted or fused for that purpose.

(4) It is not used *in its imported condition* as rods.

The trial court then comments upon the former case on this issue: *Meadows, Wye & Co.* v. *United States*, 63 Treas. Dec. 1293, Abstract

23080, affirmed in *Meadows, Wye & Co. et al.* v. *United States*, 21 C. C. P. A. (Customs) 239, T. D. 46775. The following language from the opinion of this court in that case is quoted:

> We have made a very careful examination of the testimony and have considered it fully in connection with the exhibits, and it is our conclusion that, even if it be held that the words "for whatever purpose used", appearing in paragraph 218 (b), *supra*, should be construed to mean used "for the purpose of a rod", as is held by the dissenting judge, to be the law, appellants have failed to show that the imported merchandise does not have a rod use sufficient to bring it within that paragraph.
>
> We do not overlook the significance of the words "in any other form", as used in paragraph 231, *supra*, and were it shown by the record that there is not a rod or cane use for the rods or canes involved a different question might confront us, but, while the testimony on behalf of appellants is generally to the effect that the merchandise is fusible enamel and used as such, there is no negativing of the idea that it is also rods having a use as rods. In the absence of proofs to this effect we think the presumption of correctness attaching to the collector's classification is controlling. ·

The trial court then held that "plaintiffs' witnesses have supplied the defect indicated by the appellate court in the former case", by proving the imported canes had no sufficient rod use, and that, therefore, the goods were carried within the purview of said paragraph 231. From the resulting judgment, the Government has appealed.

The two competing paragraphs are as follows:

> PAR. 231. Smalts, frostings, and all ceramic and glass colors, fluxes, glazes, and enamels, all the foregoing, ground or pulverized, 30 per centum ad valorem; in any other form, 40 per centum ad valorem; opal, enamel or cylinder glass tiles and tiling, 40 per centum ad valorem.

> PAR. 218 (b) Tubes (except gauge glass tubes), rods, canes, and tubing, with ends finished or unfinished, for whatever purpose used, wholly or in chief value of glass, 65 per centum ad valorem; wholly or in chief value of fused quartz or fused silica, 40 per centum ad valorem; gauge glass tubes, wholly or in chief value of glass, 60 per centum ad valorem.

The official sample of the imported material consists of two short lengths of green glass in the form of rods, which seem to have been broken from longer pieces. These rods each have one end finished, the other end rough, and are about one-fourth inch in diameter.

On the trial below, the importer called eight witnesses, the Government one.

Seven witnesses on the part of the importer were salesmen and domestic manufacturers of glass beads, buttons, novelties, and specialties, and testified as to the uses of the imported material, and like material. Israel Schwartz was a chemist. These witnesses testified, in general, that the imported material was fusible enamel and was used for fusing into other articles such as jewelry, pendants from chandeliers, beads, buttons, and various ornaments and ornamental articles; that it was not used for rod purposes, such as rods in bath-

rooms and the like; that, because of its considerable lead content, it was too soft for ordinary rod uses, but suitable only for enamel purposes. Such testimony as was adduced concerning the nature of the material and its designation in the trade was addressed only to the common meaning, and did not tend to show any commercial designation.

The Government, on its part, called one witness, a chemical engineer, and offered a chemical analysis of the official sample. This witness testified that material similar to that involved here might be used to make articles like cocktail spoons, stirring rods, crushers, and the like.

The analyses of the witness Schwartz, and of the official chemist, appear in full in the record, and show the imported material to be composed in large degree of silica, with large percentages of lead, sodium, arsenic, aluminum, and other oxides, and other constituents in minor degree.

The same kind of merchandise here involved was also the subject matter of the litigation in *United States* v. *Meadows, Wye & Co. et al.*, *supra*, and the competing provisions of law also were the same. In that case, the majority of the trial court held that the "all-comprehensive specifications of paragraph 218, 'rods' and 'canes' *for whatever purpose used*", was more specific as applied to the imported merchandise than was the language of said paragraph 231, "enamels, *in any other form whatever.*" In a dissenting opinion in that case, Judge Brown insisted vigorously that said paragraph 231 was intended as a provision for all enamels and fluxes of all kinds, and that the majority view of the court read out of the law the words "in any other form."

The Government, also, in that case, presented certain matters of legislative history, which it was thought showed a plain legislative intent to include the imported goods within said paragraph 218 (b).

It seems quite apparent, in studying that case, that many of the points presented need not have been discussed by the court. The burden was upon the appellants to prove their case. The collector had classified the goods as "rods" or "canes" under said paragraph 218 (b). It was therefore incumbent upon the importers to sustain their claim that the goods were not "rods" or "canes"; this court was of opinion there was an absence of proof that the imported goods were not rods, "having a use as rods."

In other words, the said *Meadows, Wye & Co. et al.* case, *supra*, was decided in this court adversely to the contentions of the appellants, because of failure to sustain the burden of proof. No other issue was there decided, and whatever appears in the opinion of the court over and beyond an expression of such thought is *obiter*, and not necessary to a decision thereof.

The case is now presented in a different light. It is shown by the testimony that the imported goods are rods, made of a soft, leaded, colored glass, and are usable, and chiefly used, as a fusible glass enamel. How should they be classified—as rods under said paragraph 218 (b), or, as enamels, under said paragraph 231? The Government calls our attention to the legislative history of these provisions and argues that it may be deduced therefrom that the legislative intent was that all such goods as are here involved should be classified under said paragraph 218 (b). There is sufficient ambiguity caused by the apparent inclusion of these imported goods within both of these competing provisions of the law, to justify resort to legislative history as a guide to our conclusions.

Glass rods were variously dutiable under the Tariff Act of 1922. Scientific tubing and rods of glass were dutiable under paragraph 218 at 65 per centum ad valorem; glass rods were also provided for under paragraph 231 of that act, as follows:

PAR. 231. Smalts, frostings, and all ceramic and glass colors, fluxes, glazes, and enamels, all the foregoing, ground or pulverized, 30 per centum ad valorem; in any other form, 40 per centum ad valorem; opal, enamel or cylinder glass tiles· tiling, and rods, 40 per centum ad valorem.

When the Tariff Act of 1930 was prepared, certain significant changes were made. In the first place the word "rods" was dropped from paragraph 231 of the Tariff Act of 1922, and does not appear in its successor paragraph 231 of the Tariff Act of 1930, while otherwise the paragraphs are the same. Secondly, scientific "tubing and rods" is dropped from said paragraph 218 of the Tariff Act of 1922, and does not appear in the Tariff Act of 1930, except as it is included in the broad provisions of paragraph 218 (b) of the latter act. Thirdly, the Congress has added in the latter act the broad language of said paragraph 218 (b), including all glass tubes and rods, *for whatever purpose used.*

These changes evidence, in the strongest manner, the intent of the Congress to take from other parts of the tariff acts glass rods, wherever they appear, and carry them within the scope of said paragraph 218 (b), which seems to have been written for that express purpose.

If we look to the proceedings of the Committee on Finance of the United States Senate, when H. R. 2667, afterwards the Tariff Act of 1930, was under consideration, the reason for these changes becomes apparent. There, Mr. Barber, representing the American Manufacturers of Biological Instruments, was heard and urged the importance of amending the act as it was afterwards amended; that is, that the changes be made which are above indicated as having been made. The reasons urged are not important here—it is sufficient to say that they seem to have been convincing and led to the changes sought being made. These proceedings appear in Hearings of the

Committee on Finance, H. R. 2667, 71st Congress, Schedule 2,. pp. 393 and 394.

When the bill was being considered on the floor, Senator Copeland of New York called attention to the many provisions in the bill covering glass rods, and moved to amend to the end that one provision might be made to cover all. The following debate was had with Senator Smoot of Utah, in charge of the bill:

Mr. SMOOT. What the Senator wants is to take out rods from paragraph 218.

Mr. COPELAND. Yes, on line 19.

Mr. SMOOT. Carrying a duty of 85 percent ad valorem, and to put them in subdivision (b), carrying a duty of 65 percent ad valorem.

Mr. COPELAND. That is right; and then take them out on page 53, line 15.

Mr. SMOOT. That means to take the rods at 40 percent out of paragraph 231 and put them in paragraph 265, and take the rods at 85 percent and put them at 65 percent.

Mr. COPELAND. I find that the large importations of these rods are under the paragraph on page 45.

Let the Senator take that to conference, and if it is found desirable to place it otherwise, of course that can be done, but I am satisfied that there is no reason on earth for having four articles identical in method of manufacture given four different rates of duty. (Cong. Rec. Mch. 7, 1930, Vol. 72, Pt. 5, 71st Cong. 2nd Sess. p. 4950.)

The matter was taken to conference, and the bill came out of conference as it now stands in the law in this respect. To ascertain and carry into effect the congressional intent is, of course, our guiding rule. It seems quite evident that the statutory changes, made as we have above indicated, would be given their legislative intent only by a holding that the imported material is properly classifiable under said paragraph 218 (b).

The judgment of the United States Customs Court is *reversed.*

### DISSENTING OPINION

GARRETT, Judge: The precise claim of the importer which was sustained by the United States Customs Court was made under that part of paragraph 231 of the Tariff Act of 1930, reading:

PAR. 231. * * * all ceramic and glass colors, fluxes, glazes, and enamels, all the foregoing, ground or pulverized, 30 per centum ad valorem; in any other form, 40 per centum ad valorem * * *.

Specifically, the claim is that the merchandise is a glass enamel, in a form other than ground or pulverized, imported to be used, and actually and solely used, as material for the manufacture of other and distinct objects.

I do not think the last clause of said paragraph 231, which provides for "opal, enamel or cylinder glass tiles and tiling," has any relation to the issue involved, nor am I able to see wherein the change made in said last clause from the Tariff Act of 1922 is here relevant.

As I construe that paragraph, it provides for two distinct classes of merchandise, the first being merchandise used as material for making something else, and the second being merchandise which, as imported and without change, has a use as a completed article.

The first two clauses of paragraph 231 of the Tariff Act of 1930, which cover material, are identical in text and punctuation with the first two clauses of paragraph 231 of the Tariff Act of 1922.

It was only in the last. clause, which I construe to cover certain articles not materials for use in making. something else but usable as finished articles, that a change was made. This change consisted of dropping rods from that class, and it does not, in my view, relate to or affect the earlier clauses providing for materials.

It is true, as the majority opinion points out, that in paragraph 218 (b) of the Tariff Act of 1930 (which had no exact counterpart in the 1922 act), provision is made for "rods  *  *  *  for whatever purpose used", but I construe that paragraph to include, like the last clause of paragraph 231, only articles having a definite use, as imported, not as material to be made into something entirely different, but as articles having uses as articles.. Some of them may have to be further worked upon after importation, since their ends may be "unfinished", but obviously, in my opinion, that work is merely the finishing of ends of articles already dedicated to use as articles, and not as material.

The foregoing constructions seem to me to be logical and entirely consistent with the text of the paragraphs, and not inconsistent with the legislative history recited in the majority opinion.

In the case of *Meadows, Wye & Co. et al.* v. *United States*, 21 C. C. P. A. (Customs) 239, 242, T. D. 46775, cited in the majority opinion, this court referred to the legislative history, saying:

*  *  *  the Government presents certain matters of legislative history.  *  *  *

As to this  *  *  *  we may here say that, waiving any question of whether there is such ambiguity in the paragraphs at issue as to justify resort to it for aid in their construction, we have examined same and our impression is that whatever bearing it might be held to have relates to the *last clause of paragraph 231, and that clause is not involved here.*  *  *  *  (Italics new here.)

As the issues were presented in that case, I think the foregoing observation was properly made there, and I adhere to the opinion there expressed.

I can readily see that the elimination of rods from the last clause and the new provision for "rods  *  *  *  for whatever purpose used" inserted in paragraph 218(b) has the effect of removing certain types of rods from a classification in which theretofore they belonged; but such rods, I think, meant rods having a use as such, and not as mere material.

I do not construe the statement made by Mr. Barber before the Committee on Finance of the Senate (waiving any question as to

the propriety of looking to it) as having related to the glass materials mentioned in the first two clauses of paragraph 231 of both the 1922 and 1930 tariff acts. He was discussing rods, not materials. Neither, in my opinion, does the record as to the amendments offered and discussed in the Senate indicate that such materials were in the minds of the Senators, or that there was any intention of affecting them.

The articles here at issue having no rod use do not compete with the rods of domestic manufacture which have such use. They compete only with materials.

It does not seem quite reasonable to me to conclude that the Congress desired to levy a duty upon glass, intended solely for material, when imported in rod form, 35 per centum higher than when that same material is imported in ground or pulverized form. That some differential was desirable upon the theory that the advancement of the material to rod form involved labor over and above that involved in placing it in the ground or pulverized form is entirely consistent with the usual policy of Congress, and such a differential was fixed by making the duty 10 per centum higher upon "any other form" than that upon the "ground or pulverized" forms.

If Congress had intended such a result as the majority finds, it seems to me that it could have easily made such intent plain by the use of appropriate language.

The trial court found from the evidence that the merchandise is a fusible glass enamel used as material for the manufacture of various articles and, although it was imported in rod or cane form, it had no use as rods.

The correctness of these findings of fact is not challenged by the majority here, but, because of what seems to me to be an erroneous construction of the paragraphs involved, and a misconception of congressional intent, the majority reverses the judgment upon the question of law.

I think the judgment should be affirmed.

BLAND, J., concurs in the dissenting opinion.